598 F.2d 225
 194 U.S.App.D.C. 306
 PUROLATOR COURIER CORPORATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents.
Trailways, Inc., Central Delivery Service of Washington,
Inc., Greyhound Lines, Inc., Intervenors.
 No. 77-1974.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 12, 1978.
Decided Feb. 1, 1979.
Rehearing Denied Feb. 23, 1979.
 
 Peter A. Greene, Washington, D. C., with whom John H. Caldwell, Neal A. Jackson and Norman J. Philion III, Washington, D. C., were on the brief, for petitioner.
 Robert D. Jones, Atty., I. C. C., with whom Mark L. Evans, Gen. Counsel, Frederick W. Read III, Associate Gen. Counsel, Kenneth G. Caplan, Atty., I. C. C. and Andrea Limmer, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondents.
 
 
 1
 Lloyd John Osborn, with whom Eugene T. Liipfert, Washington, D. C., was on the brief, for intervenor, Trailways, Inc.
 
 
 2
 William F. King and Jeffrey A. Vogelman, Washington, D. C., were on the brief, for intervenor, Greyhound Lines, Inc.
 
 
 3
 Jeremy Kahn and S. Harrison Kahn, Washington, D. C., were on the brief, for intervenor, Central Delivery Service of Washington, Inc.
 
 
 4
 Also Barry Grossman, Atty., Dept. of Justice, Washington, D. C., entered an appearance for respondent, United States.
 
 
 5
 Before BAZELON, LEVENTHAL and ROBB, Circuit Judges.
 
 
 6
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 7
 Petitioners, Purolator Courier Corp. and Central Delivery Service, challenge a decision of the ICC expanding the "terminal area" within which bus operators may pick up and deliver "express" shipments (a term that generally refers to transport of small packages.)[1] Petitioners argue that § 208(d) of the Act[2] permits a bus operator to pick up and deliver express only in vehicles that carry passengers. Alternatively, petitioners suggest that even if the bus operator may use a vehicle that carries no passengers, the ICC could not permit a larger terminal area for express (the commercial zone) than for passengers (the municipal limits.) We reject both arguments.
 
 
 8
 We are persuaded that § 208(d) was intended to limit only the line-haul operations of bus companies. Our conclusion is supported by several factors. First, the purpose of the limitation in § 208(d) seems designed to assure that express shipments not deflect the operator from his principal obligation to provide passenger service. Incidental pick-up and delivery service, even without passengers in the pick-up vehicle, must necessarily be subordinate to passenger service, since ultimately the express must travel on the passenger bus. Petitioners voice a fear that the bus companies will adjust their schedules to accommodate express rather than passengers. Should such abuses in fact arise, the ICC has ample authority to consider them through regulations and through its authority to revoke certification.[3]
 
 
 9
 Second, § 202(c)[4] is designed to provide motor carriers flexibility for their operations within terminal areas. This flexibility would be undermined if only passenger buses could be used for such pick-up and delivery service. Section 202(c) does not, in its thrust, seem to require such a result. To the contrary, the codification of the Interstate Commerce Act suggests the opposite conclusion. The newly codified provision, § 10523, states: "Transportation exempt from the jurisdiction of the Commission (because within the terminal area) is considered transportation provided by the carrier . . . And is subject to the jurisdiction of the Commission." This language replaces § 202(c), which provided that terminal area pick-up and delivery "shall be considered to be performed by (the) carrier . . . as part of, and Shall be regulated in the same manner as the transportation . . . to which (the pick-up and delivery) is incidental." By eliminating the phrase "regulated in the same manner" and substituting "subject to the jurisdiction," Congress may be seen to have clarified any suggestion in the former § 202(c) that terminal area services must be provided in the identical manner as line-haul services.[5]
 
 
 10
 The foregoing is further confirmed by the long-standing administrative precedent of the Greyhound case.[6] Although the interpretation was not contemporaneous with the enactment of the Motor Carrier Act, the practice was approved almost twenty years ago, and the ICC is entitled to substantial deference in interpretation of its statute, where it is not clearly contrary to law.[7] In codifying the Act, Congress had no intention of upsetting such a long-standing administrative precedent.[8]
 
 
 11
 We thus conclude that nothing in the Act prohibits pick up and delivery of express within a terminal area in a vehicle that carries no passengers, so long as that service remains incidental to the principal responsibility of the carrier, namely, the transportation of passengers.
 
 
 12
 Nor do we believe that the ICC is required to use the same definition of terminal area for pick up and delivery of express that it uses for passenger service. Nowhere does the Act impose such a limitation. Rather, the Act requires only that the terminal area pick up and delivery be "incidental" to passenger service. As noted above, the requirement that the operator carry express on the same vehicle with passengers for the line-haul segment places a significant constraint on the express shipment operations of the bus operator. This constraint provides an ample basis for concluding that express will remain incidental to passenger operations, even with the expanded terminal area for express.
 
 
 13
 The authority of the ICC to define and modify by regulation the definition of "terminal area" has recently been affirmed by the Ninth Circuit.[9] We cannot say on this record that the ICC was arbitrary and capricious when it concluded that the commercial zone was an appropriate terminal area for express, even though the terminal area for passengers is limited to the municipal limits.
 
 
 14
 The decision and order of the ICC is therefore affirmed.
 
 
 
 [1]
 The Commission's decision was entered in Ex Parte No. MC-37 (Sub-No. 29), Terminal Areas For Express Shipment by Bus, 128 M.C.C. 204 (1977)
 
 
 [2]
 Section 208 was added by the Motor Carrier Act of 1935, ch. 498, 49 Stat. 552. In 1978 Congress modernized, codified and enacted subtitle IV of Title 49, in the Revised Interstate Commerce Act, P.L. 95-473, 92 Stat. 1337 Et seq. Section 208(d) has now been superseded by 49 U.S.C. § 10922(c)(4), which makes stylistic changes but otherwise preserves the language of § 208(d). For convenience, we refer in the text to the original 1935 Act. This is appropriate because the 1978 revisions in the language of relevant provisions were not intended to work any substantive change in the law. See P.L. 95-473, Supra, § 3(a); H.R.Rep. No. 95-1395, 95th Cong., 2d Sess. 8, 9 (1978), U.S.Code Cong. & Admin.News 1978, p. ----. The Act specifically continues in force orders such as the one reviewed here, issued pursuant to the old Act. See P.L. 95-473, Supra, § 3(c)
 
 
 [3]
 See P.L. 95-473, § 10925, Revising and codifying 49 U.S.C. § 312(a) (1970)
 
 
 [4]
 Formerly 49 U.S.C. § 302(c) (1970), now revised and codified as 49 U.S.C. § 10523
 
 
 [5]
 As noted above, enactment of the revised Interstate Commerce Act was not intended to work any substantive change in the Act. P.L. 95-474, Supra, § 3(a). However, the new language may serve as a guide to the meaning of the original Act
 
 
 [6]
 Greyhound Corporation Investigation of Certificates, 84 M.C.C. 169 (1960). In Greyhound, the ICC upheld a vehicle that did not carry passengers. Id. at 173-74. However, Greyhound expressly limited its holding to pick-up within municipal limits. Id. at 174
 
 
 [7]
 See, e. g., Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)
 
 
 [8]
 The House Report specifically rejects any suggestion that codification of the Interstate Commerce Act would "impair the precedent value of earlier judicial decisions and other interpretations." H.R.Rep. No. 95-1395, Supra, at 9, U.S.Code Cong. & Admin.News 1978, pp. 3009, 3018. "Other interpretations" presumably include administrative interpretations
 
 
 [9]
 See Short Haul Survival Committee v. United States, 572 F.2d 240, 244-46 (9th Cir. 1978). See also Freight Forwarder Institute v. United States, 409 F.Supp. 693, 703-04, 707 (N.D.Ill.1976) (3 judge court)